UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO: 3:19-CV-00154-JHM

MATTHEW HAYDEN and KENTUCKY
PROSTHETICS, INC.                                                        PLAINTIFFS

V.

BENCHMARK INSURANCE COMPANY
and VGM INSURANCE SERVICES, INC.                                         DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint. [DN 9]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendants' Motion is **GRANTED**.

## I. BACKGROUND

Plaintiffs, Matthew Hayden and Kentucky Prosthetics, Inc., assert that Defendants, Benchmark Insurance Company and VGM Insurance Services, Inc., issued a liability insurance policy to Kentucky Prosthetics for the policy period of March 12, 2014 to March 12, 2015 (the "Benchmark Policy"). [DN 1-2 ¶ 9]. In September 2016, Edward Hawkins filed a lawsuit against Plaintiffs concerning events that occurred during the policy period. [*Id.* ¶ 10]. Plaintiffs claim they promptly notified Defendants of the lawsuit and complied with efforts taken by Defendants to investigate the matter. [*Id.* ¶ 11]. In November 2016, Defendants sent a letter to Plaintiffs informing them that they had reviewed the insurance policy and the underlying complaint and determined that no allegations triggered their duty to defend or indemnify the Plaintiffs. [DN 9 at 4]. The Defendants explained that because Mr. Hawkins' complaint did not allege any facts that met the definition of "bodily injury," "property damage," or "occurrence," there would be no coverage. [*Id.*].

Turning to the underlying lawsuit, Plaintiffs allege that on September 19, 2016, they were sued in the Hardin County Circuit Court by Mr. Hawkins. [DN 1-2 ¶ 10]. Mr. Hawkins alleged that on April 15, 2014, he began the process of obtaining a prosthetic leg from Plaintiffs. [DN 9-1 ¶ 4]. Mr. Hawkins claimed he paid Plaintiffs the purchase price of $13,525.00 for the prosthetic leg and its component parts. [*Id.* ¶ 5]. Despite full payment, Mr. Hawkins stated he did not receive the type of prosthetic leg or the accompanying parts represented by Plaintiffs. [*Id.* ¶ 6].

Mr. Hawkins brought the underlying lawsuit as a breach of contract case against Plaintiffs. [*Id.* ¶¶ 8–18]. In Count I, he alleged that the foot and ankle he received from Plaintiffs were not the prosthetic contracted for and that the provided components did not fit properly. [*Id.* ¶ 10]. Mr. Hawkins alleged that he notified the Plaintiffs of the problems with the prosthetic in December 2014 and took remedial action over the next several months—phone calls and visits to the Plaintiffs—to try to mitigate the problems with the leg. [*Id.* ¶ 12]. The specific language of Count I states: "[Plaintiffs] breached the contract by not supplying [Mr. Hawkins] with a suitable prosthetic leg despite being compensated for said leg." [*Id.* ¶ 14]. As such, Mr. Hawkins had to obtain a prosthetic leg from a different provider. [*Id.* ¶ 7]. In Count II of Mr. Hawkins' complaint, he alleged that Plaintiffs violated the Kentucky Consumer Protection Act ("KCPA") because the Plaintiffs' failure to provide "the prosthetic leg contracted for, or any suitable prosthetic leg, amounted to unfair, false, misleading and/or deceptive acts and/or practices." [*Id.* ¶ 17]. In the demand for relief, Mr. Hawkins sought damages for the "malicious, fraudulent, oppressive and/or recklessly committed breach of contract." [*Id.* at Prayer for Relief].

While Plaintiffs defended against Mr. Hawkins' lawsuit, they repeatedly requested that Defendants provide coverage—the Defendants refused. [*Id.* ¶¶ 23–27]. Despite Defendants' coverage denial, Plaintiffs allege the Defendants issued a check for the settlement amount in Mr.

Hawkins' lawsuit and paid a portion of Plaintiffs' defense costs. [*Id.* ¶¶ 29–30]. Plaintiffs claim that, prior to making these payments, Defendants attempted to settle all claims in exchange for a signed release of the Plaintiffs' claims against the Defendants. [*Id.* ¶ 33]. Plaintiffs state that although they refused to sign the release and Defendants continued to deny coverage for Mr. Hawkins' lawsuit, Defendants still made the payments. [*Id.* ¶¶ 31, 37].

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. Instead, "a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 663 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court reviews documents that are not attached to the complaint. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.* (quotation omitted).

### III. DISCUSSION

**A. Breach of Contract Claim**

Defendants assert that they are entitled to a judgment in their favor on the Motion to Dismiss because the insurance policy issued to Plaintiffs does not provide coverage as a matter of law in the underlying lawsuit. [DN 9 at 1]. Specifically, Defendants maintain that Mr. Hawkins' breach of contract and KCPA claims do not arise from an "occurrence" as required by the insurance policy to trigger coverage, nor does Mr. Hawkins' lawsuit allege that he suffered "bodily injury" or "property damage" as defined by the insurance policy. [*Id.* at 6–11].

Plaintiffs respond that Defendants breached the insurance contract by failing "to defend and agree to indemnify the Hawkins Case as required by the terms of the Policy." [DN 1-2 ¶ 65]. As the basis for this position, Plaintiffs advance two arguments: (1) the Incidental Medical Professional Services Endorsement—referred to as the "Prosthetics Endorsement" by Plaintiffs—makes clear that an occurrence exists in this case and (2) liberally construing Mr. Hawkins' complaint shows

4

that the underlying lawsuit is premised on bodily injury suffered because of the ill-fitted prosthetic. [DN 13 at 8–11].

The complaint in the underlying lawsuit brought by Mr. Hawkins and the relevant insurance policy were both referred to in Plaintiffs' Complaint and both are central to the claims contained therein. Accordingly, the Court may properly consider such documents on Defendants' Motion to Dismiss. Although Plaintiffs attached eighteen exhibits to their Response, only the first of those exhibits—the Incidental Medical Professional Services Endorsement—meets the qualifications to be considered on a motion to dismiss. The Court need not weigh the evidence contained in the remaining exhibits to determine whether Defendants are liable for breach of contract. As such, the Court disregards Plaintiffs' attachments. The Court does not convert the instant Motion to one for summary judgment and it instead remains one to dismiss for failure to state a claim.

Pursuant to Kentucky law, "[i]f there is any allegation in the complaint which potentially, possibly or might come within the coverages of the policy, then the insurance company has a duty to defend." *Nat'l Union Fire Ins. Co. v. United Catalysts, Inc.*, 182 F. Supp. 2d 608, 610 (W.D. Ky. 2002) (quoting *O'Bannon v. Aetna Casualty & Surety Co.*, 678 S.W.2d 390, 392 (Ky. 1984) (internal quotation marks omitted). "The duty to defend is separate from and broader than the duty to indemnify." *Id.* (citation omitted). Therefore, if Defendants do not have a duty to defend Plaintiffs in the underlying action, neither do they have a duty to indemnify.

Defendants argue that the breach of contract and KCPA claims brought by Mr. Hawkins in the underlying lawsuit clearly fall outside of the scope of the language defining "occurrence," and, as such, Defendants did not have a duty to defend or indemnify Plaintiffs. Further, Defendants maintain that Mr. Hawkins' lawsuit is not premised on any bodily injury or property damage. Under Kentucky law, "the duty to defend is triggered only if an allegation within the four corners

5

of the underlying complaint against the insured comes within the coverage of the policy." *Assurance Co. of Am. v. Dusel Builders, Inc.*, 78 F. Supp. 2d 607, 608 (W.D. Ky. 1999) (citation omitted). Having previously discussed the language used and the causes of action asserted by Mr. Hawkins in the underlying lawsuit, it is only necessary to review the language of the policy here. The Policy provides as follows:

> Section 1 – COVERAGES
> 1. Insuring Agreement
>    . . .
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .

[DN 1-2 at 17].

> Section V – Definitions
> . . .
> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
> . . .
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> . . .
> 17. "Property damage" means:
>     a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>     b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

[*Id.* at 29–31].

Because only "bodily injury" or "property damage" resulting from "occurrences" may trigger coverage under the insurance policy at issue here, the Court must now determine whether Mr. Hawkins' claims qualify for coverage under the liability contract. Plaintiffs argue that although the Hawkins complaint is couched in terms of contract law, the action truly sounds in tort. Plaintiffs grasp at several pieces of evidence to convince the Court that the claim is meant to be one for bodily injury, but the Court need look no further than the four corners of the Hawkins complaint. Plaintiffs

argue that the following statement in the Hawkins complaint supports a claim for bodily injury: "the leg provided by Defendants did not fit properly." A fuller reading of this statement is as follows: "[T]he foot and ankle Plaintiff received was not the . . . foot and ankle Plaintiff contracted. Furthermore, the components for the leg provided by Defendants did not fit properly." [DN 9-1 ¶ 10]. The plain language of this claim is not one for bodily injury. It is quite possible that a product was not the one contracted for and did not fit properly but still did not cause "bodily injury, sickness, or disease," as required to be covered under the insurance policy. [DN 1-2 at 29]. Mr. Hawkins claims are clearly premised on Plaintiffs' breach of contract.

Turning to whether this action arises from an "occurrence," it is evident from the underlying facts that the failure to provide Mr. Hawkins a suitable prosthetic leg does not qualify as an accident or occurrence. The relevant insurance policy is nearly identical to that at issue in *Nautilus Ins. Co v. Structure Builders & Riggers Mach. Moving Div., LLC*, 784 F. Supp 2d 767, 771–72 (E.D. Ky. 2011). In *Nautilus*, the court recognized that the Kentucky Supreme Court had not definitively addressed whether a breach of contract claim qualifies as an "occurrence" under a liability contract. *Id.* at 772. The court did however find persuasive a Kentucky Court of Appeals decision on the matter. *Id.* (citing *Kentucky Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368 (Ky. App. 2008)). "In *Blevins*, the Court of Appeals adopted the Sixth Circuit's holding that 'a breach of contract claim cannot constitute an "occurrence" under liability policies triggered by an accident or occurrence.'" *Id.* (quoting *Blevins*, 268 S.W.3d at 374). The court noted that although *Blevins* concerned a homeowner's insurance policy, additional case law—specifically from the Western District of Kentucky—supported extending this conclusion to commercial general liability insurance policies such as that provided by Defendants in this case. *See id.* at 772–73 (citing *Global Gear & Machine Co., Inc. v. Capitol Indemnity Corp.*, 2010 WL 3341464 (W.D. Ky. Aug. 23,

7

2010)); *see also Lenning v. Commer. Union Ins. Co.*, 260 F.3d 574, 582–83 (6th Cir. 2001) ("[C]ourts have held that a breach of contract claim cannot constitute an 'occurrence' under liability policies triggered by an accident or an occurrence.") (collecting cases). Therefore, according to the definition laid out in the Benchmark policy, Mr. Hawkins' claims in the underlying complaint were not caused by an "occurrence" as required to trigger liability.

The Court turns now to Plaintiffs' argument that the Prosthetics Endorsement provides the basis for coverage. Plaintiffs maintain that, according to "the plain language of the policy, an 'accident' was not required to create an 'occurrence' that would trigger coverage." [DN 13 at 4]. The specific language relied on by Plaintiffs provides:

> "Bodily injury" arising out of, the rendering or failure to render "Incidental Medical Professional Services" shall be deemed to be caused by an "Occurrence"
> . . .
> "Incidental Medical Professional Services" means . . . (2) Professional orthotic and prosthetic services, provided.

[DN 13-1]. Plaintiffs artfully attempt to reframe this provision to make it more favorable to their position. In their Response, Plaintiffs assert that the section "provides that *a claim* 'arising out of . . . professional orthotic and prosthetic services, provided' constitutes an 'occurrence.'" [DN 13 at 8]. Defendants are quick to clarify that not just *any claim* can constitute an occurrence, rather it is only a claim for bodily injury in that context that may be an occurrence. [DN 16 at 7–8]. As already discussed in detail, Mr. Hawkins' complaint—and the specific causes of action therein—make no reference to bodily injury. Plaintiffs' maneuver fails to convince the Court that Mr. Hawkins' claims arise from an occurrence as defined by the insurance policy.

It appears from the language of the Defendants' insurance policy that it was not intended to provide Plaintiffs coverage for lawsuits based on defectively produced prosthetics. As correctly noted by Defendants, the rule that breach of contract claims do not constitute occurrences ensures

8

that liability for such a failure falls on those who breached the contract or performed the faulty work and not on the insurance provider. Courts have held that "the insured . . . must assume the risk of the quality of its product and its work." *Assurance Co. of Am. v. Dusel Builders, Inc.*, 78 F. Supp. 2d 607, 609 (W.D. Ky. 1999) (internal quotation marks and citation omitted). For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss as to the breach of contract claim.

B. **Claims of Bad Faith and Kentucky Unfair Claims Settlement Practices Act**

Defendants next move to dismiss Plaintiffs' bad faith claims for failure to satisfy the test set forth in *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). [DN 9 at 11–16]. Plaintiffs assert causes of action for both bad faith and violations of the Unfair Claims Settlement Practices Act ("UCSPA"). [DN 1-2 ¶¶ 47–57]. Plaintiffs maintain that their Complaint adequately alleges facts sufficient to survive Defendants' Motion to Dismiss and that additional information will likely be turned over in discovery that supports the claim that Defendants acted in bad faith.

As with the breach of contract claim, the Court can resolve Defendants' Motion as to the bad faith claims without consideration any of the exhibits submitted by Plaintiffs. Additionally, the Plaintiffs acknowledge the importance of additional discovery to support their claims. The instant Motion remains a motion to dismiss for failure to state a claim and the Court disregards Plaintiffs' attachments not referred to in the Complaint and central to the claims therein.

In *Wittmer*, a unanimous court "gathered all of the bad faith liability theories under one roof and established a test applicable to all bad faith actions . . . ." *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000). As such, Plaintiffs claims for bad faith and violations of the UCSPA are considered together. In order to state a claim for bad faith under Kentucky law, the insured must prove three elements: "(1) the insurer must be obligated to pay the claim under the terms of

the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quoting *Fed. Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846–47 (Ky. 1986) (Leibson, J., dissenting)) (internal quotation marks omitted); *Kentucky Nat'l Ins. Co. v. Shaffer*, 155 S.W.3d 738, 741–42 (Ky. App. 2004).

As the first basis for dismissal, Defendants maintain that because they had no duty to defend or indemnify under the insurance policy, they cannot be liable for any bad faith claim. The Kentucky Supreme Court examined the first element of a bad faith claim extensively in *Davidson v. Am. Freightways, Inc.*—that court held that the self-insured trucking company defendant could not be liable for bad faith as a matter of law because it had no contractual obligation to pay the third-party claim under the insurance policy. According to the Kentucky Supreme Court,

> [t]he gravamen of the UCSPA is that an insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is contractually obligated to pay. Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute.

*Davidson*, 25 S.W.3d at 100. The Kentucky Supreme Court has defined the term "claim," as used in KRS § 304.12-230, to mean "an assertion of a right to remuneration under an insurance policy once liability has reasonably been established." *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 516 (Ky. 2006). Thus, absent a contractual obligation to pay a claim under an insurance policy, a party cannot be liable for common law or statutory bad faith as a matter of law.

Indeed, Plaintiffs fail to establish the first required element. In the present case, as discussed at length above, Defendants had no contractual obligation to pay the settlement amount to Mr. Hawkins or any portion of Plaintiffs' defense costs under the insurance policy. As stated above,

"[a]bsent a contractual obligation [to pay a claim], there simply is no bad faith cause of action, either at common law or by statute." *Davidson*, 25 S.W.3d at 100; *Shaffer*, 155 S.W.3d at 742; *see also Am. Gen. Life Ins. Co. v. Harshman*, 2015 WL 5474177, at *8 (E.D. Ky. Sept. 17, 2015). Accordingly, Defendants cannot be liable for any bad faith claims. Defendants' Motion to Dismiss as to the bad faith claims is **GRANTED**.

### C. Estoppel Claim

Finally, Defendants move to dismiss Plaintiffs' estoppel claim. [DN 9 at 16–18]. Plaintiffs respond that they were not intending to pursue a separate cause of action for estoppel. [DN 13 at 17 n.61]. Instead, Plaintiffs argue that "Defendants' decisions to both indemnify and pay for some defense costs estops or otherwise prevents Defendants from arguing there was no coverage." [*Id.*]. To the extent that Plaintiffs' Complaint can be interpreted as asserting a specific cause of action for estoppel, Defendants' Motion to Dismiss is **GRANTED**.

### IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [DN 9] is **GRANTED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

July 11, 2019

cc: counsel of record